UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
NICHOLAS RITZ, on behalf of himself and all
others similarly situated,



Plaintiffs,

                -against-

MIKE RORY CORP. d/b/a ASTORIA
BREWHOUSE, SEAN STRAW, and BRENDAN
STRAW,

                              Defendants.
-------------------------------------------------------------X

REPORT AND
RECOMMENDATION
12 CV 0367 (JBW)(RML)

*No objection to this report having been timely made, it is approved and made the judgment of this court. So ordered. [signature] 8/26/14*

LEVY, United States Magistrate Judge:

        By order dated January 14, 2014, the Honorable Jack B. Weinstein, Senior United

States District Judge, referred the motion of Milman Labuda Law Group PLLC ("MLLG") for

attorney's fees to me for a Report and Recommendation.  For the reasons stated below, I

respectfully recommend that the motion be granted.

## BACKGROUND AND FACTS

        Plaintiff Nicholas Ritz commenced this case, on behalf of himself and all others

similarly situated, in January 2012.  (See Complaint, dated Jan. 26, 2012 ("Compl.").)  The

complaint asserts claims under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219

(2006), and the New York Labor Law, N.Y. LAB. LAW §§ 650-665 (McKinney 2002).  Plaintiffs

alleged that they were employees of Astoria Brewhouse in Queens, New York, and that they were

denied minimum wage compensation, overtime pay, and spread–of–hours pay during their

employment.  (See generally Compl.)



Three MLLG attorneys – Joseph M. Labuda, Jamie S. Felson, and Netanel Newberger – appeared for the defendants in this case.[1]  On December 23, 2013, MLLG moved to withdraw as counsel for defendants.  That motion was granted on January 9, 2014, on the grounds that defendants had failed to (a) communicate with MLLG with respect to their discovery obligations, and (b) pay counsel since the inception of this lawsuit.  (See Order, dated Jan. 9, 2014.) Defendants then retained new counsel, and on May 21, 2014 the parties reported that they had reached a settlement.  MLLG now seeks a judgment of $28,229.31 in unpaid legal fees from defendants Mike Rory Corp., Sean Straw, and Brendan Straw.  Defendants have not responded to MLLG's motion.[2]

## DISCUSSION

As an initial matter, the court may exercise supplemental jurisdiction under 28 U.S.C. § 1367 to hear a fee dispute between litigants and their attorneys.  See Alderman v. Pan Am

---

[1] An MLLG associate named Matthew Brown also conducted some legal research for this case (see Labuda Decl., Ex. B), but did not put in a notice of appearance.

[2] At a status conference on December 9, 2013, I gave MLLG permission to move to withdraw as counsel by December 23, 2013 if they were unable to resolve their disagreement over attorney's fees by that date.  My order stated that a copy of the motion and supporting papers was to be "served expeditiously on defendants."  I scheduled the next conference for January 9, 2014 and directed defendants to appear by telephone if they wished to contest MLLG's motion to withdraw. (See Order, dated Dec. 9, 2013.)  At the conference on January 9, 2014, Mssrs. Felson and Labuda reported that they had notified defendants of the scheduled hearing but had received no response.  I therefore granted the motion to withdraw and gave defendants until February 26, 2014 to retain new counsel.  I directed MLLG to "forthwith serve on defendants a copy of this Order, with a letter explaining their obligations under the Order, including the requirement that the corporation retain counsel," to file an affidavit service, and to "make good faith efforts to contact defendants by telephone to explain defendants' obligations under this Order." (Id.)  MLLG subsequently filed an Affidavit of Service indicating that defendants were served with my order, as well as a letter informing them of their obligations.  (See Affidavit of Service of Parbatie Singh, sworn to Jan. 10, 2014.)  Defendants have therefore received proper notice of MLLG's motion and have opted not to respond.

World Airways, 169 F.3d 99, 102 (2d Cir. 1999) (explaining that the Second Circuit supports the "exercise of supplemental jurisdiction to hear fee disputes between litigants and their attorneys when the dispute relates to the main action."); see also Garcia v. Teitler, 443 F.3d 202, 208 (2d Cir. 2006) (upholding district court's decision to exercise ancillary jurisdiction over the resolution of the parties' fee dispute because it related to the district court's ability to manage its proceedings, vindicate its authority, and effectuate its decrees); Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998) (suggesting it would be an abuse of discretion to decline to enter an order in favor of relieved counsel for services rendered); Joseph Brenner Assocs., Inc. v. Starmaker Ent'mt, Inc., 82 F.3d 55, 58 (2d Cir. 1996) (district court did not abuse its discretion in exercising ancillary jurisdiction with respect to claim for attorney's fees because the fee dispute was related to the main action and the district court was familiar with the amount and quality of the work performed by the attorney); Cluett, Peabody & Co. v. CPC Acquisition Co., 863 F.2d 251, 256 (2d Cir. 1988) (finding that district court properly exercised supplemental jurisdiction over attorney-client fee dispute where district court had familiarity with amount and quality of legal work and had responsibility to protect its own officers in such matters).

Under New York law, to recover fees based on a breach of contract, an attorney must show: (1) the existence of an agreement; (2) adequate performance by the attorney; (3) breach of the contract by the defendants; and (4) damages. Shaub & Williams, L.L.P. v. Augme Techs., Inc., No. 13 CV 1101, 2014 WL 625390, at *6 (S.D.N.Y. Feb. 14, 2014) (citing Beautiful Jewellers Private Ltd. v. Tiffany & Co., 438 F. App'x 20, 21–22 (2d Cir. 2011)); Clover v. Shiva Realty of Mulberry, Inc., No. 10 CV 1702, 2011 WL 4530536, at *3 (S.D.N.Y. Sept. 30, 2011). The attorney bears the burden of establishing that the arrangement for compensation was fair, reasonable and

fully comprehended by the client. <u>Mar Oil, S.A. v. Morrissey</u>, 982 F.2d 830, 838 (2d Cir. 1993);

<u>see also</u> <u>Shaw v. Manufacturers Hanover Trust Co.</u>, 499 N.E.2d 864, 866 (N.Y. 1986); <u>Jacobson v.</u>

<u>Sassower</u>, 489 N.E.2d 1283, 1284 (N.Y. 1985); <u>Seth Rubenstein, P.C. v. Ganea</u>, 833 N.Y.S.2d 566,

573 (2d Dep't 2007)); <u>Matter of Bizar & Martin v. U.S. Ice Cream Corp.</u>, 644 N.Y.S.2d 753, 754

(2d Dep't 1996).  However, "under New York law, a private retainer agreement is viewed as

presumptively fair in the absence of fraud, deceit, overreaching, or undue influence." <u>Carey v.</u>

<u>Mui–Hin Lau</u>, 140 F. Supp. 2d 291, 296 (S.D.N.Y. 2001).

      Here, MLLG and defendant Mike Rory Corp. entered into a retainer agreement on

October 4, 2010.  (<u>See</u> Retainer Agreement, annexed as Ex. A to the Declaration of Joseph M.

Labuda, Esq., dated Dec. 23, 2014 ("Labuda Decl.").)  Under the terms of the retainer agreement,

MLLG agreed to represent Mike Rory Corp. in another case, <u>Medel v. Mike Rory Corp.</u>, "and any

other labor or employment law matters." (<u>Id.</u>)  Mike Rory Corp. agreed to pay an hourly rate of

$350 for partners and $275 for associates.  (<u>Id.</u>)

      MLLG has submitted contemporaneous attorney time records (<u>see</u> Labuda Decl., Ex.

B), showing that MLLG sent invoices to defendants totaling $26,149.31, which have gone unpaid.

MLLG seeks an additional $2,080 for work performed beginning on December 9, 2013, which as of

the date of MLLG's motion had not yet been billed to Mike Rory Corp. (<u>Id.</u> ¶¶ 12.)  According to

MLLG's records, the firm billed $275 per hour for Netanel Newberger, a senior associate; $300 and

then $325 per hour for Jamie Felsen, a senior associate and then a partner[3]; and $350 per hour for

---

[3]  Jamie Felson's time was billed at the hourly rate of $300 when he was an associate. The
retainer agreement states that Mike Rory Corp. would be billed at the rate of $275 per hour for
associates. (Labuda Decl., Ex. A.)  According to the invoices, Mr. Felson billed 62.5 hours on this
                                                      (continued...)

Joseph Labuda, a partner.[4]

      The retainer agreement is standard for this district, and I find it fair, reasonable, and enforceable. In addition, it is undisputed that MLLG provided legal services under the agreement, that it sent monthly invoices to Mike Rory Corp., and that the client neither paid the bills nor disputed any of the charges. I therefore recommend that defendant Mike Rory Corp. be held liable for breach of contract.

      As they were not signatories to the retainer agreement, MLLG seeks to recover from defendants Sean Straw and Brendan Straw on an account stated or quantum meruit theory. Attorney's fees may be recovered on the basis of an account stated. Bartning v. Bartning, 791 N.Y.S.2d 541, 541 (1st Dep't 2005). To prove an account stated claim under New York law, a plaintiff must show that "(1) an account was presented, (2) it was accepted as correct, and (3) debtor promised to pay the amount stated." Camacho Mauro Mulholland LLP v. Ocean Risk Retention Group, Inc., No. 09 CV 9114, 2010 WL 2159200, at *2 (S.D.N.Y. May 26, 2010); see also IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009); Leepson v. Allan Riley Co., Inc., No. 04 CV 3720, 2006 WL 2135806, at *4 (S.D.N.Y. July 31, 2006); accord

---

[3](...continued)

matter from June 2012 to August 2013 and became a partner in September 2013. (Id.) I note, however, that the retainer agreement, signed in October 2010, also states that the firm's hourly rates "may be adjusted annually." (Id.) I therefore conclude that defendants, in signing the retainer, were aware that MLLG had the right to increase its hourly rates and that, in exercising this right, MLLG did not act unreasonably. See Carey, 140 F. Supp. 2d at 296 (under New York law, "a private retainer agreement is viewed as presumptively fair in the absence of fraud, deceit, overreaching or undue influence.") (internal quotation and citation omitted).

[4] The rules of the Chief Administrator of the New York Courts provide for the arbitration of fee disputes. 22 N.Y. Code R. & Regs. § 136.5. Here, the retainer agreement gave Mike Rory Corp. notice of its arbitration rights (see Labuda Decl., Ex. A.), and it has not requested arbitration.

LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 64 (2d Cir. 1999) (holding

that an account stated claim "requires 'an agreement between the parties to an account based upon

prior transactions between them'" (quoting Chisholm–Ryder Co. v. Sommer & Sommer, 421

N.Y.S.2d 455, 457 (4th Dep't 1979))). "[A] claim for an account state[d] requires evidence that the

debtor accepted, either explicitly or by his actions, the account as being correct." Exp. Dev. Can. v.

Elec. Apparatus & Power, L.L.C., No. 03 CV 2063, 2008 WL 4900557, at *16 (S.D.N.Y. Nov. 14,

2008). The latter two elements–acceptance as correct and a promise to pay the amount stated–are

implied where a defendant receives and retains invoices without objecting to them in a reasonable

period of time. See Leepson, 2006 WL 2135806, at *4; see also LeBoeuf, 185 F.3d at 64

(explaining that acceptance "may be implied if a party receiving a statement of account keeps it

without objecting to it within a reasonable time or if the debtor makes partial payment" (citation and

internal quotation marks omitted)); Eastside Food Plaza, Inc. v. "R" Best Produce, Inc., No. 03 CV

106, 2003 WL 21727788, at *4 (S.D.N.Y. July 23, 2003) ("An account stated may be implied when

a creditor sends a statement of an account to a debtor and the debtor . . . keeps it for a reasonable

time without objecting to the correctness of the account."); Ruskin, Moscou, Evans & Faltischek,

P.C. v. FGH Realty Credit Corp., 644 N.Y.S.2d 206, 207 (1st Dep't 1996) ("Defendant's receipt

and retention of the plaintiff law firm's invoices seeking payment for professional services

rendered, without objection within a reasonable time, gave rise to an actionable account stated . . .

."); Morgan, Lewis & Bockius LLP v. IBuyDigital.com, Inc., 14 Misc. 3d 1224(A), 2007 WL

258305, at *2 (N.Y. Sup. Ct. Jan. 11, 2007) ("It is well-settled that the receipt and retention of an

invoice without objection within a reasonable period of time may give rise to an account stated

claim."). The rationale for permitting a recovery on an account stated theory is that the parties have,

by their conduct, evidenced an agreement upon the balance of an indebtedness. Interman Indus.

Prods., Ltd. v. R.S.M. Electron Power, Inc., 332 N.E.2d 859, 859 (N.Y. 1975)).

       MLLG has satisfied all of the elements of an account stated with respect to

defendant Brendan Straw.  All of the monthly invoices were sent to his attention (see Labuda Decl.,

Ex. B), and he made no written or verbal protest.  Nor has he raised any defenses to the account

stated claim.  Thus, MLLG's account stated claim is uncontested, and I recommend that MLLG

recover from defendant Brendan Straw for account stated.

       Likewise, absent a retainer agreement, an attorney may recover legal fees in

quantum meruit.  See Matter of Cohen v. Grainger, Tesoriero & Bell, 622 N.E.2d 288, 288 (N.Y.

1993); Campagnola v. Mulholland, Minion & Roe, 555 N.E.2d 611, 614 (N.Y. 1990); Matter of

Schanzer, 182 N.Y.S.2d 475, 480 (1st Dep't 1959), aff'd, 169 N.E.2d 11 (N.Y. 1960)).  Under New

York law, to recover under a claim for quantum meruit, a plaintiff must demonstrate "'(1) the

performance of services in good faith, (2) the acceptance of the services by the person to whom they

are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the

services.'"  Leibowitz v. Cornell Univ., 584 F.3d 487, 509 (2d Cir. 2009) (quoting Mid–Hudson

Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005)); see also

Gould v. Lightstone Value Plus Real Estate Inv. Trust, Inc., 301 F. App'x 97, 99 (2d Cir. 2008);

Compagnia Importazioni Esportazioni Rapresentanze v. L–3 Commc'ns Corp., No. 06 CV 3157,

2007 WL 2244062, at *7 (S.D.N.Y. July 31, 2007).

       Here, MLLG appeared and performed work on behalf of all three defendants.

According to Mr. Labuda, MLLG met and communicated with both Brendan Straw and Sean Straw

throughout this litigation, with the expectation that the firm would be compensated for its time.

(See Labuda Decl. ¶¶ 8-10.) Accordingly, MLLG is entitled to the fair and reasonable value of the services the attorneys rendered to all of the defendants.

When awarding legal fees in quantum meruit, the court may consider multiple factors to determine the fair and reasonable value of an attorney's legal services, including:

> [(1)] the difficulty of the matter, [(2)] the nature and extent of the services rendered, [(3)] the time reasonably expended on those services, [(4)] the quality of performance by counsel, [(5)] the qualifications of counsel, [(6)] the amount at issue, and [(7)] the results obtained (to the extent known).

Sequa Corp. v. GBJ Corp., 156 F.3d 136, 148 (2d Cir. 1998). "It is appropriate, after 'consider[ing] all the factors relevant to a quantum meruit fee analysis . . . [to] turn[ ] to lodestar analysis to reach a specific dollar figure for the value of the services rendered[.]'" Antonmarchi v. Consolidated Edison Co. of N.Y., 678 F. Supp. 2d 235, 242 (S.D.N.Y. 2010) (quoting Sequa Corp., 156 F.3d at 148). "This method, which results in the determination of the presumptively reasonable fee, is comprised of a reasonable hourly rate multiplied by a reasonable number of expended hours." Melnick v. Press, No. 06 CV 6686, 2009 WL 2824586, at *4 (E.D.N.Y. Aug. 28, 2009).

MLLG's contemporaneous time records describe in detail the work Mssrs. Labuda, Felson, and Newberger performed during the course of their representation of defendants in this matter. This included drafting the Answer, opposing a motion for collective action, drafting and responding to discovery requests, litigating discovery motions, briefing and arguing a motion to dismiss, and appearing at various court conferences. (See Labuda Decl., Ex. B.) During the period of non-payment, defendants did not object to the invoices–reflecting the number of hours billed–as being unreasonable. Having reviewed MLLG's application thoroughly, I find the firm's hourly rates reasonable and in line with rates awarded in the Eastern District for similar work, and the

-8-

number of hours expended acceptable. See Idrovo v. Mission Design & Mgmt,. Inc., No. 10 CV 4188, 2012 WL 6755273, at *3 (E.D.N.Y. Nov. 28, 2012) (recommending that MLLG be awarded fees at the same rates for defending FLSA case), adopted, 2013 WL 29925 (E.D.N.Y. Jan. 2, 2013); Clover, 2011 WL 4530536, at *3 (allowing MLLG to recover attorney's fees on breach of contract action where nothing in the firm's affidavit or billing records indicated the attorneys acted in bad faith or unreasonably). In sum, I respectfully recommend that MLLG's motion for attorney's fees be granted.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that MLLG's motion for attorney's fees be granted and that judgment be entered in favor of MLLG and against all defendants, jointly and severally, in the amount of $28,229.31. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Weinstein and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1)(C) (2009); FED. R. CIV. P. 72, 6(a).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
July 30, 2014

-9-